ACCEPTED
12-14-00253-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/6/2015 4:54:34 PM
CATHY LUSK
CLERK

CASE NO. 12-14-00253-CV

In The

TWELFTH COURT OF APPEALS

OF

TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS

1/6/2015 4:54:34 PM

CATHY S. LUSK
Clerk

**FILED**

4/8/2015

**Twelfth Court of Appeals
Cathy Lusk
Clerk**

Jerry Weaks and Joyce Weaks, Appellants

V.

Kathleen Jeanette White, Appellee

Appealed from the 392nd Judicial District Court
Of Henderson County, Texas

APPELLANTS' REPLY BRIEF

Aubrey L. Jones, Jr.
Attorney-at-Law
P. O. Box 168
Athens, TX 75751

ATTORNEY FOR APPELLANTS

Jane Parreiras-Horta
Attorney-at-Law
Lone Star Legal Aid
110 N. College Ave.
Suite 302
Tyler, Texas 75702

ATORNEY FOR APPELLEE

## TABLE OF CONTENTS

PAGE

Names of parties................................................................ 2
Issues presented................................................................ 3
Statement of facts.............................................................3
Replies to Points Raised by Appellee.....................................8
Prayer.............................................................................11

## NAMES OF PARTIES

The following list is a complete list of all parties to the action:

Plaintiff/Appellee:          Kathleen Jeannette White

Defendants/Appellants:       Jerry Weaks and Joyce Weaks

## ISSUES PRESENTED FOR REVIEW

### 1.

The trial court erred in determining the proper offset of reasonable rent against the refund of Plaintiff Kathleen Jeanette White's purchase money.

### 2.

The trial court erred in failing to recognize any common-law defenses to the claims of Plaintiff Kathleen Jeanette White.

### 3.

The trial court erred in awarding the total amount of attorney fees claimed by Plaintiff Kathleen Jeanette White.

## STATEMENT OF FACTS

Kathleen Jeanette White ("White"), the Plaintiff in the trial court and the Appellee herein, entered into an executory contract for the purchase of certain real property. She entered into the contract with Jerry Weaks and wife, Joyce Weaks (referred to collectively herein as "Weaks" or as "the Weaks"), the Defendants in the trial court and the Appellants herein. The contract was dated June 5, 2002. It provided for the purchase of certain property located in or near Malakoff, Texas, described briefly as 1.33 acres, located in the J.W. Sally Survey, A-702, as shown in plat recorded in Volume 568, Page 357, Plat Records of Henderson County, Texas. The contract provided for a total purchase price of $30,000, which was to be paid, first, by a down payment of $3,000, and, second, with the remaining balance to be paid in monthly installments of $356.81 over a term of 10 years. See Clerk's Record ("CR"), Volume 1, pages 62-64. White began making the monthly payments and continued to make same over a period of almost ten years. During the term of the contract, she was frequently late in making the payments, and occasionally she got behind by two or three months. Each time Weaks would work with her to allow her more time to bring the payments up to date. See CR, Vol. 1, pages 104-106. During

that time, the annual property taxes were paid by the Weaks. The water utility, same being Crescent Heights Water Corporation, was to have been paid by White. Frequently, the Weaks ended up paying the water bills because White had not paid them. Id. At some point near the end of the ten year period, White arranged to have the property tax statements sent to her, and the Weaks assumed that White was paying the property taxes. Id.

In or about December 2011 or January 2012, the Weaks were served with citation in regard to a property tax foreclosure suit that had been filed by Henderson County. See CR, Vol. 1, page 105. After learning of this, the Weaks paid the past due property taxes so that the foreclosure suit was settled. Id. In early February 2012, the Weaks were advised by White or some of White's other family members that White was going to Florida and would be gone for an extended period of time if not permanently. In order to avoid the possibility of frozen pipes and the resulting flood of the property, the Weaks shut off the water supply. Id., at pages 104 & 105. To the surprise of the Weaks, White returned to the property in late February or early March 2012 and discovered that the water supply had been shut off. White then demanded that the water supply be restored, and at that time White sought legal assistance from Lone Star Legal Aid. See CR, Vol. 1, page 105. After seeking such legal assistance, White advised the Weaks that White was rescinding the executory contract for sale as allowed under Chapter 5, subchapter D., of the Texas Property Code. See CR, Vol. 1, page 105. White filed suit in March 2012 in which she sought a restraining order against the Weaks, restraining them from shutting off the water supply and also demanding reimbursement of the monies paid by White over the years for the purchase price of the property. See CR, Vol. 1, page 105; also pages 1-12. Such reimbursement is called for as a remedy for the failure of the seller in an executory contract to provide certain disclosures and notices to the buyer. Such suit was filed in the underlying Cause Number 2012B-0340 in the 392nd Judicial District Court of Henderson County, Texas, and

from which this appeal is taken. See CR, Vol. 1, pages 1-12.

In the suit, White made her claim for rescission of the executory contract, for reimbursement of the purchase money she had paid, and for certain liquidated damages, under the following sections of Chapter 5, Subchapter D, of the Texas Property Code: (1) Section 5.069, requiring the disclosure of the property condition prior to the signing of the contract, (2) Section 5.070, requiring the disclosure of tax payments and insurance coverage, to be issued by the seller to the buyer prior to the time of signing the contract, (3) Section 5.072, requiring disclosure of the financing terms and requiring a specific written statement that no oral agreements would be effective (all of such notices to be provided to the buyer prior to the time of signing the contract), and, finally, (4) Section 5.077, requiring the provision of annual accounting statements by January 31 of each year, stating, among other things, the amount of principal and interest paid during the previous year, the number of payments remaining, and the balance of the purchase price remaining to be paid. See CR, Vol. 1, pages 1-12.

A motion for summary judgment was filed by White in which it was claimed that there were no genuine issues of material fact as to any of the claims of White under the applicable Texas Property Code provisions. See CR, Vol. 1, pages 38-56. The Weaks countered that they had substantially complied with the provisions of Sections 5.069, 5.070, 5.072 and 5.077, and the Weaks further attempted to raise affirmative defenses of estoppel, waiver, and laches. See CR, Vol. 1, pages 99-106. After hearing, the trial court found that there were no genuine issues of fact and declared that it was undisputed that the Weaks had failed to comply with the requirements of each provision. See Reporter's Record ("RR"), Volume 2, Pages 36 & 37. Thus the trial court determined that White had established as a matter of law that the Weaks were in

violation of each provision. Id.; also see CR, Vol. 2, pages 167 & 168. Also included in White's motion for summary judgment was a request for an award of attorney fees. See CR, Vol. 1, page 54. White's attorney presented an affidavit as to the work that she had undertaken in representing White and in seeking the summary judgment; the affidavit called for an award of $10,250 in attorney fees. See CR, Vol. 1, pages 68 & 69. The affidavit of the attorney indicated that the fees were for the attorney's total representation of White in regard to all of White's claims. The fees were not segregated as to any particular claim. Id. The trial court granted the attorney fees that were asked for. See RR, Vol. 2, page 37; also see CR, Vol. 2, pages 167 & 168 Thus, the trial court granted these claims as an interlocutory order and as a partial summary judgment. See CR, Vol. 2, pages 167 & 168. The trial court directed the parties to present briefs on the issue of whether an offset should be applied to White's reimbursement of purchase money, and the court directed the undersigned attorney for the Weaks to brief the issue of whether common law defenses (which the Weaks had attempted to raise) could be applied to the statutory remedies sought by White. See Reporter's Record ("RR"), Volume 2, pages 36 & 37.

After receiving the parties' briefs, the trial court issued a letter ruling, dated February 10, 2014, in which the court stated that a hearing would be conducted later on the sole issue of the reasonable rent to be applied as an offset to White's reimbursement. See CR, Vol. 2, page 156. The letter ruling stated that the rent that the court would be considering would be the amount that would have accrued during the period that White continued to occupy the property after she had given notice of the rescission of the executory contract. Id. By implication, the trial court rejected the Weaks' requested application of common law defenses.

The court conducted a later hearing on the issue of the offset to be allowed in favor of the Weaks. See RR, Vol. 3, pages 1-6. The parties agreed to recognize the monthly payment

amount of $356.81 as a reasonable rental figure in determining the offset. As indicated in the letter ruling of February 10, 2014, the trial court found that the amount of offset should be determined by multiplying the reasonable monthly rental amount (i.e., $356.81) by the number of months that White continued to occupy the property _after_ she had given her notice of rescission. This period of time was determined, and agreed, to be 21 months. Thus, the trial court recognized the offset figure to be $ 7,493.01. See RR, Vol. 3, pages 4 & 5; also see CR, Vol. 2, pages 173-176. Even though the above dollar figures were agreed to by the parties, along with the number of months that White occupied the property after giving her notice of rescission and demand for reimbursement, it was understood that no party was giving up any right to appeal any issue. More specifically, it was understood that Weaks would maintain the right to appeal on the issues previously raised such as the (1) proper amount of offset for the total period of White's occupancy, (2) the application of common law defenses, and (3) the proper calculation and award of White's attorney fees. See RR, Vol. 3, pages 1-6.

The final order was signed on August 6, 2014 in which the trial court recognized the rescission of the executory contract by White, and granted a money judgment in favor of White in the adjusted amount of $35,826.52. It also provided judgment in favor of White for recovery of attorney fees in the amount of $10,250, which was the amount originally sought by White in her motion for summary judgment. See CR, Vol. 2, pages 173-176.

Following the signing of such final judgment, this appeal was perfected.

# REPLIES TO POINTS RAISED BY APPELLEE

## I. Reply to Appellee's First Point Regarding Offset in favor of Seller

In Appellee White's first point, the Appellee seems to assume that the party attempting to rescind the executory contract in question was Weaks, the Defendant/Appellant. Appellee goes to great lengths to discuss the restrictions on a rescission by the seller after the buyer had been paying the installments under the contract for several years and had thus paid over 40% of the purchase price. Apparently, Appellee is trying to say that she had an equity interest in the property, and that by rescinding the contract, she was handing her interest back to the Weaks. Presumably, this would be her restitution to the Weaks instead of an offset of money for her use of the property.

The issue before this Court is not any rescission by the Weaks. It is the rescission ordered by the Plaintiff/Appellee, Kathleen Jeanette White. It was White who sued for rescission and for judgment for reimbursement of the purchase money she had paid. The issue is what kind of offset should be allowed for the seller, the Weaks. As is set out in Weaks' appellate brief, our Texas Supreme Court, in **Morton v. Nguyen,** has recognized the right of offset for the full amount of usage (i.e. the reasonable rental value) of the property by the buyer (White). Such an offset will result in at least a take-nothing judgment in favor of Weaks, if not a money judgment in favor of Weaks for the remainder of the reasonable rental value over and above the amount of purchase monies that have been paid by White. As our Texas Supreme Court has noted in **Morton,** to fail to require such an offset of reasonable rental value would be to give an unreasonable and unmerited windfall to the buyer. As explained in Appellants'

brief, under White's reasoning, a buyer could have use of property for over 10 years, and then after a technical violation by the seller, could rescind the contract and get all her money back. Thus, she would have had free use and occupancy of the property for all that time. This is an absurd and unfair result that our Texas Supreme Court has rightly attempted to prevent.

Also, in regard to the offset and the dollar amounts agreed to by the parties, what was agreed to was the reasonable monthly rental value of the property, and the dollar amount of offset as determined by the trial court under the offset formula that the court recognized. Thus, what was agreed to basically were the dollar amounts -- not the principle that the offset would only be for the period of occupancy by the buyer after giving notice of rescission. The trial court recognized a right of offset. It was aware that Weaks disagreed with the trial court's application of the law regarding offset. The trial court well understood that the issue of the period of occupancy, and the offset for same, would be an issue for appeal. See RR, Vol. 3, pp. 3-6.

## II.    Reply to Appellee's Second Point in Regard to Common-law Defenses

In considering the Plaintiff/Appellee's motion for partial summary judgment, the trial court was considering the pleadings of the parties, which included the amended answer filed by the Weaks, in addition to their response to the Plaintiff/Appellee's motion for summary judgment. It is apparent that the trial court recognized that there was a question about the applicability of common-law defenses. See RR, Vol. 2, pp. 17, 37, & 39. The trial court specifically directed the Weaks attorney to brief that issue and supply such brief to the trial court. Id. The issue was briefed, and the trial court was so advised. However, by implication according

to the trial court's letter ruling of February 10, 2014, the trial court rejected the Weaks' argument that common law remedies should apply. Thus, the applicability of common law remedies was properly presented to the trial court, and the court ruling was properly preserved for error to be presented to this Court.

## III. Reply to Appellee's Third Point in Regard to the Award of Attorney Fees

In Appellee's brief, the Appellee stresses the point that the attorney's time and hourly rate were stated to the trial court as part of Appellee's motion for partial summary judgment, and were uncontroverted. That is basically true, but it is not determinative of the reasonableness of the award of attorney fees, and does not show entitlement to attorney fees as a matter of law. As stated in the Appellant's brief, the Weaks were in no position to cross-examine the attorney for White in order to question the attorney's efforts or rates to be charged. Rather, in the trial court, the Weaks raised the legal issues as to the reasonableness of the award of attorney fees. In their appeal, the Weaks again have raised the legal issues as to the trial court's award in light of the guidelines that had been previously recognized by our appellate courts in determining any award of attorney fees. Such guidelines are set out in Appellant's brief.

Also, as recognized by our Texas Supreme Court in **Morton**, it is essential that, in a multiclaim case such as the present one, any award of attorney fees must be directed to the claim which allows for an award of attorney fees, and not to the case as a whole. Thus, Plaintiff/Appellee should have segregated her claim for attorney fees to the time and efforts related to the claim under Section 5.077 of the Texas Property Code, which is the only claim that allowed for recovery of attorney fees.

It should also be pointed out that the damages allowed under that section are set by

statute and are punitive, thus requiring no special proof. Likewise, the Weaks' failures to give the notices required by Section 5.077 required no extraordinary efforts to prove. Such failures were easily proven by the affidavit of White, and by the deemed admissions of Weaks. Surely the review of the requirements of Section 5.077, and the obtaining of the proof to show the Weaks' failures under that section, could not have taken the 71 hours of effort that White's attorney stated to the trial court that she spent in preparation of White's case, nor the 41 hours that were actually charged. Instead, it is clear from White's attorney's affidavit in support of her motion for summary judgment that the 71 hours spent on the case included her overall efforts in regard to the case as a whole (including, but not limited to, initial research as to facts and all legal issues and the seeking of a restraining order), and not specifically to the claim under Section 5.077. See CR, Vol. 1, pp. 67-69. Thus, even though White's attorney may have proven that she had spent the hours stated and had expended the efforts described in prosecuting White's case as a whole, she did not prove as a matter of law that she was entitled to the requested amount of attorney fees for her efforts in regard to the statutory damages provided under Section 5.077.

## PRAYER

WHEREFORE, this Court is urged to consider these factors in reply to the points stated by Appellee, and after considering all arguments, it is again submitted that the trial court judgment should either be reversed and remanded for trial on the merits so that the Weaks may raise the common law defenses and other matters discussed herein; or alternatively it is submitted that the trial court judgment be reversed in part and reformed in part by finding that White should take nothing in regard to any reimbursement of purchase monies under Sections

5.069, 5.070, and 5.072, and that the award of attorney fees under Section 5.077 should be reversed and reduced to a sum of no greater than $1000, or alternatively, that the issue of attorney fees be remanded to the trial court for hearing on the merits.

Respectfully submitted,

_Aubrey L. Jones, Jr._
Aubrey L. Jones, Jr.
Attorney at Law
State Bar No. 10859100
P.O. Box 168
106 W. Tyler St.
Athens, Texas 75751
Telephone: (903) 675-7990
Fax: (903) 670-3424
Email: aubreyjoneslaw@embarqmail.com

ATTORNEY FOR APPELLANTS

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the above Appellants' reply brief has been served on Appellee's attorney of record, Ms. Jane Parreiras-Horta, in accordance with the Texas Rules of Appellate Procedure.

Signed this 6th day of JANUARY, 2015.

_Aubrey L. Jones, Jr._
Aubrey L. Jones, Jr.